Good morning, Your Honors. May it please the Court, I'm Howard B. Hillen. I'm here on behalf of the Plaintiff and Appellant, Gil Capianco. I think that there are two overarching issues in this case, one of a technical nature, which we regard as the more minor issue, and one of a much broader substantive nature. The technical issue goes to whether Mr. Capianco was charged with the burden of knowing whether he was covered by a continuity of coverage provision in his plan policy with Hartford. The broader issue, I think, is was he charged with that knowledge, and did Hartford, in fact, know that it had a duty to investigate whether he had that potential for coverage due to information that he brought to Hartford's attention, his internal appeal of the denial of benefits. Let me redirect your attention a little bit away from the issues of a purported duty to investigate and plaintiff's knowledge as to whether he thought he was covered. I think the real issue is, was he covered? Well, I think the real issue is, do principles of federal common law override the technical issue of whether he was covered because of his reasonable expectations in the way the contract has to be interpreted under Firestone and its progeny? Well, I don't think you're going to find principles of federal law that say, let's skip the contract and decide whether somebody's entitled to think he's reasonably covered. Was he covered? Let's start with that question. Why was he covered by this plan? Well, he was covered by this plan because the contract language said that if he had coverage for this disability under a previous policy issued by the same employer, then the continuity of coverage provision would be waived. I mean, I'm sorry, the preexisting condition bar would be waived. I don't actually look at the language of the policy or the plan. Yes, Your Honor. Well, and you said numerous times in your brief that there's no definition of prior plan. And I look and I find the definition of prior plan that you choose not to discuss. So what do I make of that definition? Well, I think that the definition of prior plan was not included and the intent was to say that the definition of prior plan was not included in the area of the contract that dealt with preexisting condition and continuity of coverage. Contracts have definitions at the front. Those definitions don't apply only to the definitions pages. They apply to the contract. This isn't the world's largest contract. So at some point, I think you're going to have to deal with the definition of prior plan. Unless you're willing to concede that if you use the definition of prior plan under the policy, your client's not covered. I can't agree with that, Your Honor. Well, let me break it down then. All right. Do you agree that if the definition of prior plan contained on policy page 7, S.E.R. 16, where it says prior plan means the long-term disability insurance carried by the employer, capital E, on the day before the plan effective date, capital PED, if that definition is applied here, does your client lose? No, Your Honor. He wins because Then tell us why. In his declaration, Mr. Capianco's sworn declaration, which constitutes evidence in this case, he states that the employer, EuroMed, is in fact one and the same with SSGI prowess and that there is really no difference in employer. A fact that was overlooked by Harford in this case. It's really the same company. There was some sort of consolidation. It's in his declaration, and I can probably point to that in the excerpts of record. Sorry. One moment, Your Honor. I'll find it. I acknowledge what you're saying in terms of his declaration, so let's parse that a little bit. The plan effective date is actually a precise date. And is it the position of your client that because he was covered by policy carried by the employer for an employer's predecessor, the SSGI, on the day before the plan effective date, he falls within the definition of prior plan? Yes, that is our contention. Okay. And because it's our contention that he was covered, I think that it's very proper to discuss the other issues that apply in this case. There are a couple of issues that were raised by Hartford in terms of the fact that it was not charged with the representation made by Ms. Skobelia of Uramed that specifically and affirmatively assured Mr. Katyanko that he would not be treated as a new hire, that he would be treated as an existing employee because essentially it is the same company and it is the same division. And therefore, she was told by Hartford that the continuity of provision would – the continuity of coverage provision would apply and the preexisting condition bar would be waived. Now, Hartford argues that it's not charged with doing anything in that situation and that arguably would be correct if Hartford had no knowledge of that representation. But before the administrative record closed, which is the body of evidence that a court can generally consider even under an abuse of discretion standard review, in that administrative record we have the appeal letter, the internal appeal. Yeah, but that doesn't tell you anything about when – did Hartford know at the time the representation was made or at a time when Hartford might have been able to say, no, that's not what we said or that's not what we mean. The fact that in the course of the adjudication or appeal, the document surfaces really doesn't put much into Hartford's voice. Is there anything that attributes this to Hartford prior to the time the dispute arose between the parties? No, not prior to the time, Your Honor, but Hartford had an opportunity, as you correctly said. They had an opportunity when the appeal letter was submitted to look at that and say, oh, well, you are allowed to present additional evidence on internal appeal. That's part of ERISA and that's before the record closes and you have to then decide whether to litigate the issue. I don't see where that gets you. The fact that it surfaces in the course of the resolution of the dispute between the parties doesn't say that Hartford had that knowledge at a time when it should have spoke up and said, we didn't say this. I mean, this doesn't put anything into Hartford's mouth as of April of 2001. Well, I agree, Your Honor, but I don't think it has to. I think this is an ongoing, continuous process where until Hartford says that's it, we're not going to review this anymore short of litigation. It has a continuing duty to look at any evidence that Mr. Capianco presented. How much evidence did Mr. Capianco put in front of Hartford before the litigation began with respect to the continuity of employer? One of the issues that's clearly in front of us is does the term employer in the definition of prior plan include not only his current employer but his prior employers? How much evidence that would go to the application of that term employer was in front of Hartford that would have prompted inquiry? So they should have said, well, okay, let's figure out what the relationships were between his current employer and his prior employers. Well, I think that evidence was contained in their own plan policy, which was attached as an exhibit to the appeal letter where, you know, if the term prior employer was defined. No, that's not my question at all. My question is not what does their policy say. My question is who were the various employers of your client and what were the relationships among those employers so that one could determine whether the term employer in the policy included the prior employers or not? And the evidence of the policy is not evidence of the underlying facts. Yes, that's true, Your Honor. So what evidence do we have of the underlying facts or what notice of the underlying facts were there that should have prompted Hartford to investigate the underlying facts? I think the notice was the memo that was attached to the appeal letter. Which memo? The memo by Ms. Scobilia who said because this is not being treated as a transfer from one employer to another, you're not going to be treated as a new hire and the continuity of coverage provision will apply. So that's enough to put them on notice that that's the nature of the claim? I think so. Whether that's a waiver by Hartford or not, that's certainly enough notice to put them on enough to say, okay, this is what we're claiming. I believe so, Your Honor. And at what point is it your client's obligation to present more evidence? At what point is it simply their obligation to investigate? As soon as the letter was received by Hartford and it was read by Hartford and it was clearly shown that this representation was made, then the burden shifted to Hartford. They had a duty to then take that information, which created at least an inference of prior coverage, and go with that. What evidence do we have in the record now before us, not merely the administrative record but the evidence now before us, of the nature of Mr. Capianco's employment by various employers that would help us decide whether the earlier employers were employers within the meaning of the prior policy definition? Well, I think you have two things. Okay. You have Mr. Capianco's own sworn declaration. Are you referring to paragraph 12 of that declaration? I think so. Let's see. Yes, I believe I am. Mr. Capianco says that he was covered with a UNAM LTD policy with Prowess SSGI, which is in essence the same thing with respect to Mr. Capianco as you're met. Oh, I see. That's paragraph three. Okay. I'm with you. Yeah. So that's one thing. I think that his sworn testimony in the context of this court's de novo review of the summary judgment is certainly reviewable. And I also think that the other documents that he attached to his declaration bear some relevance in terms of creating even bolstering that at least inference even more that, hey, you have coverage from SSGI, okay, and then SSGI has a summary of coverage, which was provided somewhere on an exhibit to his declaration. And the SSGI summary of benefits refers not to the prior UNAM policy, but to the same Hartford policy that's in dispute. Now, why would SSGI refer to a Hartford policy if it was, you know, a different employer? It's the same policy that's at issue here. So I think that creates a very strong evidentiary showing that it is one and the same employer. Otherwise, there would have been some switch. There would have maybe been a later issued policy or an amended policy by Hartford or something else, but it's exactly the same policy. So I think that also tends to show that continuity between one insurance policy and the next, which I believe is that the prior policy definition is pointing to. If it's a prior policy but it's by the same employer, then the preexisting is waived and you're covered by continuity. Mr. Helland, this is Silverman of Phoenix. Yes, your honor. Don't you also have to show under the prior policy that his preexisting conditions were not barred? I believe that that's true, your honor. And did you show that? I don't believe we did because as a matter of fact, there was no issue as to whether he would be barred or not. In other words, there was no notice to him. There was no action taken by Unim Provident that would indicate that he would be barred by a preexisting condition clause. I also would like to add that I believe that the only evidence or the portions of the Unim Provident policy that we were able to obtain, I believe did not go to that issue or did not include very substantial portions as to disability. There was a whole bunch of information that wasn't relevant concerning life and accidental death and that sort of thing. And I don't believe my client, if I'm remembering correctly, was able to obtain a full portion of that policy respecting the disability component. So I guess I would have to say that we don't really know the answer to that question completely. Okay. So basically, what we're left with is because there is some fairly decent evidence, we think, that the continuity of coverage provision should apply. Then I think it's only natural to couple that with Mr. Capianco's reasonable expectations, whether a person under federal common law of average intelligence and experience, how Mr. Capianco would understand the language that was available to him as a person of average intelligence and experience, would look at that contract, especially coupled with the representations made to him with Hartford's knowledge, which constitutes a waiver of their right to now assert that he was barred by the preexisting condition exclusion. I hope that makes some sense. Why don't we hear from the other side, and then you'll save some time for rebuttal. Yes, thank you very much. Thank you. May it please the Court. Good morning, Your Honors. Dennis Ralston of Sedgwick, Dederick, Moran, and Arnold for defendant Annapolis Hartford Life and Accident Insurance Company. This is a contract case, and the record and the evidence demonstrates that appellant is not entitled to disability benefits under the ERISA plan because he suffered from the preexisting condition, and he did not have a continuity of coverage. Now, I believe that in multiple cases. Is the problem that his prior employers are not employers within the meaning of the definition of the policy of prior policy? Well, that is a problem. Is that the problem? Well, that's only – no, that's not – I don't think that's the primary problem. If we move beyond, if we take it as admitted that he had a preexisting condition, we move on to the continuity of coverage exception. Well, if we read that exception, he's got multiple problems with meeting that exception. Number one, it says if you became insured under the group insurance policy on the plan effective date. Well, the plan effective date, as defined in the policy, is April 1, 2000. That's the date this policy first took effect. He was not even an employee of URAMET on April 1, 2000. Who is he an employee of? He appears to have been an employee of ROCS, R-O-C-S, which is a completely different company. Oh, but that means we're back to the definition of employer. Well, but we've got to look at this policy itself. I mean, the plan effective date of April 1, 2000, I understand your question, and if I can work back into that. So he's not an employee of URAMET. There's no evidence, actually, in the record other than the self-serving declaration that he was covered under any SSBI. No, virtually all declarations are self-serving. Yes. And we can't put aside all declarations. So is there any other problem with the declaration besides the fact that it advances the interest of the declarant? Well, no, but I believe that under summary judgment, the trial court judge fully could set aside that and discount that evidence when it's not supported by any other evidence in the file. He might have been able to discount it if there's a stack of evidence to the contrary. You can't create an issue by turning in a declaration that says that's not true. But is there any evidence at all with regard to exactly what his job path and what the company's relationships with each other were during this time period? I mean, can we preclude the possibility that his employer at that time was acquired by or the business was acquired by or somehow what we are now calling Euromed, only that name changed, too, so I've kind of lost track. But whoever his employer is, it's actually he was just grinding away at the same job and as the corporate transactions went on, he winds up with the company known as Euromed. Is there evidence that precludes that possibility? I have two responses to that, if I may. The first is other than the Hartford policy, the only other long-term disability plan setting aside the fact that there's evidence that he actually participated in. Setting aside the what? The only other long-term disability plan is that he was. But you said setting aside the something and I didn't hear what it was. The declaration. I see. I just want to look at the actual other evidence first. The other evidence is he participated in this plan issued by Radiation Oncology Computer Systems from October 199 through November 30, 2000. All right, we don't know. We don't know the exact relationship of that company. We believe plaintiff had plenty of opportunity to develop that evidence. We don't know. But there's no evidence that they would satisfy the policy. There is no contrary evidence. So what we have on that subject is the declaration of the plaintiff in broad language and the e-mail that talks about him being not a new hire but part of a group that transfers in. Those both seem to suggest that maybe there's a relationship amongst these entities so that his job is not like he came in off the street and got hired or left one job and took another, but that from his perspective he's grinding along and his business gets acquired and he winds up working with a new name on the paycheck, but he's working at the same job. If we can't preclude that, then do we have a basis for summary judgment with regard to that argument? Well, the first way it's precluded is because the policy does not cover that situation. The only time the continuity of coverage works is when the policy is first issued to Euromed. It covers the Euromed employees who the day before were subject and participant in a different policy issued to Euromed. Let me stop you right there. I understand that's one way it works, but if you look at the continuity from a prior plan, it says insured under the prior plan. That's first. Let me come back to that because that's the key. Second, actively at work, and third, not eligible to receive benefits under the prior plan. Is it April 1st? Is that the date, April 1st? I've now forgotten, but what's the effective date we're talking about? The effective date of this plan, of the Hartford policy, is April 1, 2000, yes. So maybe on March 31, 2000, he's working for this business that winds up being acquired by Euromed. How is it that couldn't arguably fall within the definition of prior plan here? Well, I'd say first we're speculating that he worked for a company because, again- Well, stop right there because we've just talked about that, and you seem to have acknowledged to me there's no evidence to counter the statement of the declaration and the inference arguably drawable from the email that he worked for somebody that got acquired or got pulled into Euromed. So don't tell me there's no evidence because there's no evidence to the contrary, and there's at least a smidgen of evidence that supports that theory. So give me reason number two. Well, okay, and what I meant by that is just he was participating in the ROCS policy, not an SSGI policy. I find it- But I don't know who ROCS is. I don't know either. So that's sort of my problem. Granted, is this a powerful plaintiff's case presented so far? No, but that's not the question in summary judgment. Well, the second issue I'd look at is why is there a gap in coverage then? All right. The evidence is he did not become insured under the Hartford plan until March 27 of 2001. That's over three months after his prior coverage ended. Now, what happens here and what's on your- Prior coverage ended. Do we have a specific date? Yes, we have. Again, he presented evidence under that ROCS policy, the evidence being a letter from apparently an HR person with the ROCS company. It's labeled NOMOS. NOMOS and ROCS, I don't know if they're exactly the same thing. But nonetheless, there's a letter from somebody at NOMOS saying he was a participant in the ROCS policy and plan, and the dates of that are October 1, 1999 through November 30, 2000. That's at Excerpt of Record 164. Well, he didn't become a participant in the Hartford plan until March 27, 2001. That's in Supplemental Excerpt of Record 498, pursuant to Bureau Med. Well, there's a- How does that take him out of the continuity from a prior plan definition? All right. And I did want to get back to that definition because there's really two sections of this continuity definition. That first section, the top portion, really refers to deferred effective dates, which is not what we're talking about here. Deferred effective date is if somebody on the first date they're supposed to participate in the Hartford plan actually is not at work. What we're talking about is the second part of the definition that starts, if you become insured- I'm sorry. I've got the policy in front of me. What page of the policy are you on? It's Excerpt of Record 84. And that's page 10 of the policy? I'd have to double-check the record. I'm on- Okay. Yeah, so where are we? All right. Under the bolded heading continuity from a prior plan- I'm with you. There's the first part with the 1, 2, 3, and then that applies to the deferred effective date provision. It will not apply to you. That's really not what we're talking about. We're talking about the second paragraph that begins, if you become insured under the group insurance policy on the plan effective date, which is the date the plan first took effect as otherwise defined in the plan, and were covered under the prior plan on the day before the plan effective date, then the preexisting condition ceases to apply on one of the two following. If your coverage was not limited by a pre-ex under the prior plan, which there's no evidence of, or if your coverage was limited under the prior plan when that limitation would have ended. But so if you look at this, if you become insured, there's several problems with it. As we've already discussed, he didn't become insured under the Hartford policy on the plan effective date. And why not? Because he was not even an employee. That's the issue. But he was an employer, right? I don't believe this policy covers that circumstance. But that goes back to the contested question of employers. Yes. So if that's your only argument as to why he was not covered on effective date, that one's up in the air because I think there's enough evidence in the record to suggest that we've got a prior employer. He may or may not lose. He may or may not win on that ultimately, but he's got evidence on the record that says he had a prior employer that comes within the definition of employer. And then it says covered under the prior plan on the day before the plan effective date. So I don't understand. And not only, okay, let's assume for a second, all right, that this prior employer, he was actually under the ROCKS plan. We don't know exactly who ROCKS is. The plaintiff did not present any evidence on that. But there's still a gap in coverage. If we take his effective date as the effective date he first participated in the Hartford policy, that is more than three months after his ROCKS coverage ended. Now, how do we know for sure that that's when his ROCKS coverage ended? Well, that's the best evidence we have is the letter from NOMOS that he participated in the ROCKS policy on those dates. And so if his ROCKS policy ended... How much of this, once you put on notice as to the nature of his claim, as to say the nature of his claim is, listen, I'm coming in because I've been working at the same job all this time. I've had a lot of different employers, lots of different names. As Judge Clifton says, the name changes on the paycheck, but I've been working on the same job all this time. And I've got somebody from Human Resources say, listen, you're just covered because it's a continuation. How much of the obligation is on you as to say on your client to investigate? So you're saying, well, I don't know what the ROCKS policy is and so on. How much of it is your obligation to find that out? Well, here's a different problem. And I think there is some obligation, but let me work into that. Because whether this is ERISA or whether this is under common law, a failure to investigate does not create coverage. You know, I didn't ask that. I asked, what is your obligation? Well, all right. Under ERISA, historically... Let me put this in context because I think it speaks to the summary judgment situation where you comment about the lack of evidence and we don't know. I thoroughly agree. A failure to investigate isn't going to create coverage. But at a time when the facts are uncertain and your client did have a duty to investigate, I'm not sure that the uncertainty can ever work to your client's advantage, that it may be necessary to pin down just what these appointment relationships were before we can figure out how the policy language gets applied. And if that's the case, it may not create coverage, but it suggests that maybe this isn't the right stage for... If we don't know, then whose responsibility is it that we don't know? Well, there is evidence in the record, which I submitted in the supplemental excerpt of record, that Hartford did indeed investigate this point on appeal. Now, contextually, Hartford's investigation, they didn't reach an appeal opinion because instead of waiting, and it did take some time, Hartford let the claimant know that there were a number of issues that were taking longer than normal, and instead of waiting, the claimant went ahead and filed suit. Now, so the investigation didn't end, but there is evidence in the excerpt of record, the supplemental excerpts, that Hartford did indeed investigate these issues, but did not come up with any evidence that would support what plaintiffs are arguing today. Mr. Rolstad, this is Silverman. Yes. Thus far, we've been talking about whether the terms of the contract provide coverage. Even if you're right, I wonder why it is that he doesn't get past summary judgment on his estoppel claim. He says he's come forward with evidence that he made a specific inquiry about whether there was coverage and that there is evidence from which it can be reasonably inferred that someone at Hartford told the employer, don't worry, you're covered, and they responded to him in that fashion in writing. Why isn't that enough for him to get by a summary judgment on the estoppel issue? Well, there's two problems with it. Number one, because it's been held by the U.S. Supreme Court that a policyholder employer's actions and statements do not bind an ERISA insurer. Why can't we infer that the employer heard this from Hartford? I think, I suppose maybe you can infer, but there's no evidence that Hartford actually said this. All we have is that one email. Stop, stop, stop. There is evidence. We can infer from the email that somebody at Hartford said it. And to just be honest about it, there's no real reason to think the HR person made it up. She might not have talked to somebody with authority. She may have misunderstood. There are thousands of reasons why Hartford's not to be attributed to this statement. But there is evidence for summary judgment purposes that suggests that maybe Hartford did say it. So I don't know that you can say there's just no evidence. It's there. The email is there. Yes, it is. I would say that's certainly insufficient evidence to prevail on summary judgment or to defeat summary judgment. I think you've got to present sufficient evidence to show a triable issue, that is evidence that would show it's the same whether it's who the employers were, it's the same for what the Hartford. There was plenty of opportunity to investigate. There's plenty of opportunity to take discovery. Plaintiff made no effort before the court to say, wait, it's not time for summary judgment. I need to do more investigation. I need to take depositions. He's not appealing for many discovery orders. The trial court did indeed consider evidence from outside the record that is under Mongoluzo was only done in a rare case, but it was done here. There was no evidence that the trial court excluded because it wasn't in the record. So what I'm saying is plaintiff had plenty of opportunity to investigate all of this, to take discovery. That wasn't done. It's far too late at this point to complain, oh, now I wish summary judgment had been granted. I want to go back to the discovery I didn't do before. So you're not saying there's no evidence. You're saying there's not enough evidence to survive summary judgment because a plaintiff has to come up with enough to make out a prima facie case. That's correct. Is that altered because of the duty to investigate in terms of Hartford's obligation to go out and try to gather up the facts with regard to which company is which, for example? I respectfully submit it is not because, again, the duty to investigate cannot create coverage. That's both at Common Law and at ERISA. Even under ERISA, it was contested. Let me make myself clear. I'm not talking about creation of coverage. I'm talking about in areas of factual uncertainty. And here the obvious example is what are these various companies and is there a relationship between Roxx and Uramed and so forth. If we're uncertain as to the facts, you're saying, well, plaintiff's got the duty to prove a case, has to come up with a prima facie case, so just a little bit of evidence isn't going to be enough to survive summary judgment. Is that altered by the fact that it was presumably your client that was supposed to gather up the facts and be able to put the facts on the table? I'm not saying create a coverage the policy wouldn't call for. I'm saying at the time of summary judgment, in terms of saying how much plaintiff has to come in with, is that bar maybe lowered because your client was supposed to investigate and come up with the facts? I would say no because, in fact, on de novo review, the court is not supposed to be looking at what the insurer did or did not, what the claims administrator did or did not do. In fact, until recently, there was a lot of dispute as to whether there was any duty to investigate under ERISA at all because the DOL regs don't require that. Now, a Beatty was really not cited to the court that talks about discretionary review. Now, if you don't investigate, you may lose some of your discretion. That is, the discretion may be lessened. Well, what's the ultimate ramification if you do a terrible investigation? You get de novo review, which is exactly what the court applied here. But you're not quite coming to terms with Judge Clifton's question. Certainly. We're not really at the moment arguing about de novo review and we're not arguing about whether or not a failure to investigate creates coverage. We're arguing about, okay, there's some gaps in our knowledge, and you're trying to take advantage of the gaps in the knowledge, saying we don't know this. But if your company had an obligation to investigate and that's why we don't know it, who has the obligation to investigate then becomes quite relevant because we're just trying to figure out who bears some responsibility for the fact that we don't know fact X or Y. Well, first I'd say it's very interesting that we're arguing about failure to discover facts that were within the plaintiff's knowledge. Plaintiff would know better than Hartford would know who his prior coverage was, who his prior employers were. And we'd also be speculating to believe that in the course of investigation, both certainly by the attorneys that people have not contacted the prior employers, that people have not contacted Ms. Sebelia, that information is not before you. All we have is the concrete evidence developed. But I don't believe, it's certainly not in the law a requirement of the party opposing summary judgment that they completely disprove plaintiff's case. Plaintiff has the burden to come forth with that evidence to prove coverage. Then we can attempt to disprove it, or we can say, well, there's a lack of information. Well, I believe that under, as I stated earlier, under the definition itself, we've proved that he was not entitled to continuity of coverage. But, moreover, there's no evidence sufficient, I believe, to prevail or even defeat summary judgment showing that he would be entitled to continuity of coverage, even if we try to bootstrap in this argument about other prior employers and whatnot, again, which I believe is not called for or not allowed under the policy. This is, again, if the policyholder is the employer. If the employer wanted a policy that said, look, if we acquire other employees, they'll also get continuity of coverage, somebody could have written that in. Maybe it would have been a higher premium. That's not what this policy provides. They could have maybe gotten rid of preexisting condition altogether at a higher premium. That's not what this policy provides. This policy is extremely explicit. It's only intended on continuity of coverage under its language to apply to those employees of EuroMed who were employees the day before under EuroMed's prior policy and then would be entitled to Hartford's policy. And, yes, it's very common to have that. Well, your current employees for you aren't going to lose coverage because of continuity of coverage if they didn't have continuity of coverage problems with their prior policy. That's all it's providing for here, and that was what was negotiated between the employer and Hartford. That is the four corners of the contract we look at. Okay. Your time has expired. Thank you. Thank you very much. Response? Yes, Your Honor. Thank you. I'll try to make this as brief as possible. My main response is just going to be directly to some of the comments just made in the opposing argument. First of all, my colleague has made a point of my client having every available opportunity during the course of litigation to conduct discovery that is absolutely not accurate. At our court conferences that we had with the magistrate judge in this action, we were explicitly precluded from obtaining any discovery other than the BMS claims manual. That's part of the record. As far as the opposing people, as you may recall from the declaration of Mr. Cappianco and my statement of facts, she was unavailable. We could not get a deposition of Ms. Scaviglia. We were going to get a voluntary declaration confirming what she said in her memo as being accurate. Now, why was she unavailable? She was unavailable because she changed her mind for some unknown reason and then refused to provide a declaration. Subpoena her? The court prohibited any depositions, so it didn't seem the court prohibited any depositions. And what rationale did the court give for prohibiting a deposition at this moment? That discovery is limited in ERISA cases, Your Honor. Oh. So we couldn't get the discovery. Our hands were tied. We wanted to get discovery, and it's somewhat outrageous to be accused of failing to conduct something that we were prohibited from conducting by the court. I mean, we would have done that. How easy would it have been available to you? How easy would it have been for you, or how easy would it be for you in the future to figure out the precise nature of the relationships among your client's prior employers? Well, Your Honor, first of all, I think just as a preface, I think that relationship is already at least circumstantially proved by the fact that the SSTI policy is covered under a memo to Mr. Katyanko. You're asking us to draw some distant inference. Somebody, somewhere, has records that answer all these questions specifically. Right. So let me refine the question to make clear, how hard would it be to really find out? Well, it wouldn't be hard if we could depose a responsible person at Hartford who didn't commit perjury and testify accurately in their deposition as to whether, in fact, they imparted that knowledge to Ms. Skobilia that he would be covered under the continuity of coverage provision. That's certainly an issue, but I'm also concerned about something that your client should have more knowledge about in terms of what exactly, who was his employer at what time, and how did it come to change? It seems to me there's a whole body of knowledge that would be useful to have that's as accessible to your client as it is to Hartford, and we don't have any of it. So is it obtainable? If life is breathed back into this case, is somebody going to commit to actually gather it up rather than continue with pretty distant inferences? We would commit to that, Your Honor. If we were permitted a reasonable degree of discovery, we could propound requests for document production from any of those employers that might possibly still be in existence, for example. We could depose Ms. Welch if we can find her. We can depose other people whose names appeared on some of the other exhibits attached to Mr. Kapianka's declaration. At least we should be given the opportunity to try, Your Honor. We were not given the opportunity to try, and that's why we have the evidence that we have today. I'm concerned that you didn't appeal the discovery orders. What can we do about that? Well, there was nothing really to appeal, Your Honor. This was not a formal order. This was a statement made in the conference by the magistrate judge that don't even bother to even try to get any other discovery. So, Your Honor, what could we have appealed? There was nothing on paper. Well, you could have objected to it. You would have overruled it, and then you're off and running. Well, if that was the shortcoming, I apologize. It was an informal conference, and in my years of practice, I've never done or heard any other counselor ever make a formal objection in an informal conference. You're technically right, Your Honor, but that did not occur to me at the time, and I don't think my client should suffer the consequences of that. Okay. That concludes your time, unless you've got one last remark you wish to make. Yes, one last remark, and I'll leave it at that. Okay. One thing that I think the Court needs to keep in mind here is that despite the claims by Hartford that this is only a matter of contract law, this is an ERISA matter, and an ERISA matter, according to the United States Supreme Court in Firestone, is a matter of trust law, not just contract law, and those principles which the Court is familiar with and I don't have time to discuss need to be considered in this case as well. Okay. Thank you, Your Honor. Thank you very much. I thank both sides for their argument. The case of Kapianko v. Hartford Life is now submitted for decision. With your indulgence, I'd like to take a five-minute recess before we do the next case.
judges: Silverman, W. Fletcher, Clifton